# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | **CR-10-BE-0054-S** |
| ] | |
| **LATOSHA SHURON MADISON,** ] | |
| ] | |
| **Defendant.** ] | |

### MEMORANDUM OPINION

This matter comes before the court on the "Defendant's Amended Motion to Dismiss Case" (doc. 36). Both sides briefed the issue and the court held a hearing on July 28, 2010, after which the court allowed additional submissions regarding IRS Regulations raised by the Defendant. For the reasons stated below, the court finds the motion is due to be DENIED.

An investigation by the IRS that began in early 2005 slowly matured into the twenty-eight count Indictment filed February 23, 2010. The Indictment, in essence, charges that Latosha Madison, a tax preparer, made numerous false entries on 2003 and 2004 tax returns for seventeen of her clients. The Defendant and her counsel met with IRS agents and an AUSA in September 2009 and were allowed to read the memoranda of the IRS interviews with her taxpayer clients that formed the basis of the indictment. Approximately five weeks before the <u>second</u> trial setting,[1] Defendant filed a discovery motion seeking 2001-02 and 2006-07 tax returns for the

---

[1] This case was originally set for trial in May, but Defendant waived her speedy trial rights and moved to continue the trial based upon its complexity. The court granted the motion and continued the trial to July 12. The pendency of this motion resulted in another continuance.

1

taxpayers referenced in the Indictment. The Government sought to retrieve the requested documents, but learned that all 2001 and 2002 returns had been destroyed pursuant to the IRS's routine document retention policy. *See* Declaration of Curtis F. Wolfe, Ex. 1 to Doc. 41; Internal Revenue Manual Ex. 1.15.29-1 ¶¶ 55(1)(a), 56(1)(b), 2007 WL 2615192 (2010). That policy provides for the disposal of tax returns after six years. Upon destruction, the IRS only retains electronic summary records referred to as "transcripts." The Government provided all the pre-2003 transcripts to the Defendant, but they contain little of the information the Defendant contends is relevant to her defense.

The Defendant then moved to dismiss[2] the Indictment based upon the Government's destruction of the pre-2003 tax returns that she claims are both exculpatory and central to the impeachment of the taxpayer witnesses. (Doc. 36). She relies primarily upon *Brady v. Maryland*, 173 U.S. 83 (1963) and *Arizona v. Youngblood*, 488 U.S. 51 (1988). *Brady* does not apply because the case has not been tried, the Government has not suppressed anything, and the prosecution does not possess the documents sought. *See U.S. v. Meros*, 866 F.2d 1304, 1308 (11th Cir. 1989) (To establish a *Brady* violation, the defendant must prove: (1) the prosecution *possessed* evidence favorable to the defense; (2) the defendant does not possess the evidence, nor could she obtain it with any reasonable diligence; (3) the prosecution *suppressed* the favorable evidence; and (4) a reasonable probability that the *proceedings would have turned out differently* if the favorable evidence had been disclosed.)

Instead, the question for the court is whether the case should be dismissed because the

---

[2]Initially, the Defendant filed "Plaintiff's Motion to Dismiss Case" (doc. 31). She subsequently filed "Defendant's Amended Motion to Dismiss Case" (doc. 36).

IRS failed to preserve tax returns that predate those charged in the Indictment. This issue must be analyzed under the standards established in *California v. Trombetta*, 467 U.S. 479 (1984) and *Arizona v. Youngblood*, 488 U.S. 51 (1988), and as interpreted in *U.S. v. Revolorio-Ramo*, 468 F.3d 771 (11th Cir. 2006).

To establish that loss or destruction of evidence by the Government constitutes denial of due process, the Defendant must prove:

(1) The evidence possessed an exculpatory value that was apparent before it was destroyed;

(2) The evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means"; and

(3) Law enforcement destroyed the evidence in bad-faith.

*Revolorio-Ramo*, 468 F.3d at 774 (quoting *Trombetta*, 467 U.S. at 489; *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004)). For the reasons discussed below, the court concludes that as to all of the pre-2003 tax returns, the Defendant has failed to show exculpatory value that was apparent before destruction and that the IRS destroyed the evidence in bad faith. As to the second factor, while she may have difficulty obtaining comparable evidence as to *some* of the taxpayers for whom she allegedly prepared false returns, that one factor does not establish a constitutional violation.

The Supreme Court set forth this test in the 1984 decision of *California v. Trombetta*, 467 U.S. 479 (1984). In *Trombetta*, police officers who had arrested motorists for drunk driving failed to preserve samples of the motorists' breath given during "Intoxilyzer" breath tests. The officers could have retained the samples, although doing so was not their ordinary practice. 467

U.S. at 482-83.  The motorists subsequently moved to suppress the results of their Intoxilyzer tests on the grounds that they could have used the samples to impeach the incriminating test results.  *Id.* at 483.

After a series of appeals, the Supreme Court found that the Due Process Clause of the Fourteenth Amendment did not require the police to preserve the breath samples to be able to introduce the test results at trial.  *Trombetta*, 467 U.S. at 488.  The Court noted that whatever duty the Constitution may impose to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense."  *Id.*  To be considered constitutionally material, evidence must possess apparent exculpatory value prior to its destruction, and be unavailable by other reasonable means.  467 U.S. at 489.  Further, the destruction of such evidence was not a constitutional violation because it was not destroyed "in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny."  467 U.S. at 488.  Because the breath samples did not satisfy that test – at the least, they had not been destroyed in bad faith – the test results were admissible against the motorists. 467 U.S. at 491.

In *Arizona v. Youngblood*, the Court elaborated on the *Trombetta* test.  488 U.S. 51 (1988).  In *Youngblood*, the police did not preserve semen samples taken from the clothing of a sexual-assault victim.  488 U.S. at 52-53.  After the defendant was convicted, he appealed, asserting that properly preserved semen samples may have exonerated him.  488 U.S. at 54.

The Supreme Court found that the police had no duty to preserve evidence "of which no more can be said than that it *could* have been subjected to tests, the results of which *might* have exonerated the defendant."  488 U.S. at 57 (emphasis added).  Stated another way, imposing on

4

the police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution" would be fundamentally unfair.  488 U.S. at 58.  Instead, to prove a due process violation through destruction of evidence, a criminal defendant must show that the police destroyed the evidence in bad faith – i.e., that the police destroyed the evidence when they *knew* that it was exculpatory.  488 U.S. at 56 n.*, 58.

If the destruction of semen samples in *Youngblood* did not constitute a denial of due process when not destroyed in bad faith, then the destruction of the pre-2003 tax returns in this case cannot be a denial of due process absent a showing of bad faith.

The Eleventh Circuit in *Revolorio-Ramo* relied upon *Trombetta* and *Youngblood*'s reasoning to reach the same conclusion regarding the government's pre-trial destruction of a fishing vessel after seizure of the vessel and its crew for cocaine smuggling.  468 F.3d 771.  The crew argued that the boat was a fully-equipped fishing vessel, and that evidence of that fact would have proved exculpatory against the drug charges brought against them because it would have established that they were genuine fishermen as opposed to drug traffickers.  *See* 468 F.3d at 773-74.

But the Eleventh Circuit disagreed.  In particular, the court found that the defendants had ample opportunity to establish the boat's fishing capabilities at trial through cross-examination of law enforcement witnesses who had seen the boat, as well as through the defendants' own testimony.  468 F.3d at 774-75.  The court also noted the lack of evidence that the government had destroyed the vessel in bad faith.  468 F.3d at 775.

Under the principles set forth in *Trombetta*, *Youngblood*, and *Revolorio-Ramo*, the motion to dismiss must be denied.  The Defendant has failed to satisfy the three-part test required

to establish a due process violation caused by the routine destruction of pre-2003 tax returns.

    1.    **The pre-2003 tax returns did not possess exculpatory value that was apparent before their destruction.**

In an effort to establish the exculpatory nature of the pre-2003 tax returns, the Defendant relies on provisions from the IRS regulatory Code. *See* Defendant's Supplement to Motion to Dismiss Case (doc. 43). Specifically she asserts that 26 C.F.R. § 1.6694-2(d) affords her a good faith and/or reasonable reliance defense which, she contends, defeats a tax fraud charge. For this proposition, she relies on cases that either do not support her position or directly contradict it. At best, these cases indicate that the question of good faith reliance on an accountant's advise or interpretation of a tax code should be presented to the jury. *See U.S. v. Venditti*, 533 F.2d 217, 219 (5th Cir. 1976) ("This Court has held that where a defendant attributes underpayment of taxes to inefficient bookkeeping and a negligent accountant, the question of willfulness is not removed from jury consideration. . . .) (Citations omitted.); *U.S. v. Regen*, 937 F.2d 823, 826 (2d Cir. 1991) ("The district court should have instructed the jury that, if it found the reliance was held in good faith, the defendants could not be held criminally liable for proceeding in accordance with that reliance."); *U.S. v. Segel*, 867 F.2d 1173, 1178-79 (8th Cir. 1989) ("Segal argues that he had a good and full defense for his failure to file with the IRS as a bookmaker: his accountant told him it was not necessary. Reliance on expert advice can be an exonerating defense in criminal tax cases. . . . However, to prevail the defendant must show he actually relied on expert advice and that his reliance was in good faith.") (Citation omitted).

The most relevant portion of that regulation[3] reads:

---

[3]By quoting the regulation on which the Defendant builds her argument, the court does not decide whether this regulation or any of the others contained in Defendant's submission

> (d) *Exception for reasonable cause and good faith*. The penalty under section 6694(a) will not be imposed if considering all the facts and circumstances, it is determined that the understatement was due to reasonable cause and that the preparer acted in good faith. Factors to consider include: . . .
> (4) *Preparer's normal office practice*. . . . Such a normal office practice must be a system for promoting accuracy and consistency in the preparation of returns or claims and generally would include, in the case of a signing preparer, checklists, methods for obtaining necessary information from the taxpayer, <u>a review of the prior year's return</u>, and review procedures. . . .
> (5) *Reliance on advise of another preparer*. . . . and good faith exception applies if the preparer relied in good faith on the advice <u>of another preparer</u> . . . who the preparer had reason to believe was competent to render such <u>advise</u>. . . .

26 C.F.R. § 1.6694-2(d) (Emphasis added.)

The Defendant argues that her purported reliance on prior year's tax returns would establish her good faith and reasonable reliance and thus would exonerate her. The destroyed pre-2003 tax returns of her clients thus, she asserts, were exculpatory. Because the IRS regulation grants such a defense, she argues that the exculpatory value of those tax returns had to have been apparent to the IRS agents before those documents were destroyed.

     Her argument, as enticing as it appears at first blush, contains many flaws. First, as to *four*[4] of the taxpayers' returns charged in the Indictment, only fraudulent entries in 2004 returns were charged, not 2003 returns. The Defendant has not requested the 2003 returns for those taxpayers, which presumably still exist. The pre-2003 tax returns would have no relevance as to those charges related to the 2004 returns.

     Second, the Defendant herself prepared pre-2003 tax returns for ten of the seventeen

---

actually apply to any of the issues here.

     [4]Count 18 - "R.C."; Count 20 - "D.L."; Count 21 - "T.W."; and Count 22 - "S.K."

taxpayers listed in the Indictment. The regulation only provides protection for good faith reliance on the "advice of another preparer." 26 C.F.R. § 1.6694-2(d)(5). Assuming a tax return prepared by another tax preparer qualifies as "advice," then prior returns prepared by the Defendant herself would not qualify for any such good faith defense. Further, if the pre-2003 returns she prepared contained the same incorrect information as the 2003 and/or 2004 returns charged in the Indictment, she would have no basis to assert good faith reliance on her own incorrect work. On the other hand, if those pre-2003 returns contain the *correct* information and she put incorrect information on the charged returns, those pre-2003 returns would be far from exculpatory.

Third, the Defendant submitted summaries of the interviews of four of the remaining taxpayers mentioned in the Indictment – S.G., T.J., D.P. and P.P.[5] The Government submitted the entirety of the memoranda of taxpayer interviews for all the taxpayers whose returns are included in the Indictment. A review of those four complete interviews does not support finding that the pre-2003 tax returns would have exculpatory value that was apparent to the agents before they were destroyed.

For example, D.P. and P.P. provided the agents with documents they gave Defendant to prepare their 2003 and 2004 tax returns. Noticeably absent was any mention of pre-2003 tax returns in that list. In addition, the Indictment charges misrepresentations concerning improper mortgage interest and employee business expenses (doc. 1, Counts 1, 2, 14, and 15). Those

---

[5]She also included summaries of interviews with eight taxpayers for whom she prepared pre-2003 returns or whose 2004 returns *only* are charged. As stated above, the destroyed pre-2003 returns would not have contained apparent exculpatory evidence as to those eight taxpayers.

deductions for 2003 and 2004 probably would not have been the same as on pre-2003 returns[6], so those destroyed returns would not contain exculpatory evidence that would have been apparent to the agents before their destruction.

  Similarly, S.G. admitted to the agents that he had filed as head of household in prior years, so the Defendant does not need pre-2003 tax returns to establish that fact. In any event, the Defendant will be able to obtain that evidence through S.G.'s testimony. The Indictment charges that the Defendant made false entries concerning medical expense deductions (doc. 1, Count 9). Again, because medical expenses would vary each year, the pre-2003 tax returns would not provide exculpatory evidence that would have been apparent.

  Again, the pre-2003 tax returns would not provide exculpatory evidence as to the charges involving T.J. When T.J. listed the documents that the Defendant required for preparing her 2003 tax return, she did not include her prior tax return. Further, the Indictment charges that the Defendant included false deductions for medical expenses, charitable contributions, and educational credits (doc. 1, Count 10). These items would not be the same from year to year. Thus the destruction of T.J.'s pre-2003 tax returns does not violate due process.

  A review of the actual memoranda of the witness interviews dispels the Defendant's rank speculation that the pre-2003 tax returns contained exculpatory value. She also has failed to establish that the agents "had to know" based on these interviews that the pre-2003 returns would be exculpatory or even helpful to the defense. She also has not shown – through the interviews with the taxpayers or otherwise – that her normal office practice included a review of the prior

---

  [6]Even if the mortgage interest were the same in both years, merely relying on the prior year's tax return without checking the facts would not demonstrate good faith.

year's tax return to establish a basis for use of the good faith defense under 26 C.F.R. § 6694-2(d)(4).  More than speculation is required to establish a due process violation.  *Youngblood*, 488 U.S. at 52-53.

      2.      Defendant can obtain comparable evidence through other means.

The Government acknowledged that the pre-2003 tax returns of three taxpayers could *possibly* provide exculpatory value.  Those taxpayers – K.W., S.G., and S.K. – admitted to the IRS agents that they had incorrectly designated their filing status or incorrectly claimed a dependent in years prior to 2003 and 2004.  Even if these taxpayers' prior returns would have been helpful, the Defendant can obtain that same information through their testimony at trial.

      3.      The IRS did not destroy the pre-2003 returns in bad faith.

Even if somehow the pre-2003 tax returns were obviously exculpatory and no other comparable evidence were available, the Defendant still would not be entitled to the requested relief because she has failed to establish that the IRS destroyed those documents in bad faith.  As the Supreme Court has explained, in the context of destroyed evidence, bad faith means "a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny."  *Trombetta*, 467 U.S. at 488.

The Defendant alludes to the time delay between the investigation that began in 2005 and the Indictment in 2010 so that the pre-2003 tax returns could be destroyed before they were requested as evidence of bad faith by the IRS .  However, the prosecuting team, including the IRS agent, met with the Defendant and her attorney in September 2009 and discussed the basis of the Indictment.  The Defendant made no request at that time to preserve pre-2003 returns that she now asserts she relied upon in good faith for the challenged returns.  Had she made such a

request, the documents could have been secured then or their destruction would have been more suspect. The court does not place the burden on the Defendant to take action to preserve evidence herself that is in the Government's possession, but merely notes that the absence of such request tends to negate bad faith by the Government in following its routine destruction schedule.

The only evidence presented to the court establishes that the pre-2003 tax returns were routinely destroyed in accordance with the regular policy of the IRS. That document retention policy calls for destruction of tax returns after six years. These documents at issue here were destroyed pursuant to that policy and not as part of "a calculated effort to circumvent the disclosure requirements." *Trombetta*, 467 U.S. at 488. Thus, the Defendant failed to demonstrate bad faith by the Government in destroying the pre-2003 tax returns.

Having failed to establish the requisites for a due process violation, the Defendant failed to support her motion. The Motion to Dismiss will be DENIED by separate order.

DONE and ORDERED this 19th day of August 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE